# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RICKY GREER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 4:16-CV-00935-DGK |
| | ) |
| PROGRESSIVE CASUALTY INSURANCE | ) |
| COMPANY, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This suit concerns the underinsured coverage of insurance policies issued to Plaintiff Ricky Greer ("Plaintiff") by Defendants Progressive Northwestern Insurance Company ("Progressive Northwestern") and Progressive Casualty Insurance Company ("Progressive Casualty"). Plaintiff had two separate insurance policies: one with Progressive Northwestern for a 2015 Harley Davidson Motorcycle ("Harley Policy"); and one with Progressive Casualty for a 1993 Chevrolet C3500 and a 1990 Mazda Miata ("Chevy and Mazda Policy"). Both policies contained underinsured motorist ("UIM") benefits provisions.

On August 2, 2015, Plaintiff was involved in an accident with another driver while riding his 2015 Harley Davidson Motorcycle. He claims his damages from the accident exceed $350,000. Plaintiff recovered $100,000 from the other driver's insurance company, and demanded payment from his own insurance providers pursuant to his UIM coverage. Defendants denied Plaintiff's claims under each of the policies.

Plaintiff then filed this action in the Circuit Court of Jackson County, Missouri, seeking payment of his UIM benefits and asserting a claim for vexatious refusal to pay under Missouri

Revised Statute § 375.420. Defendants timely removed this action to the federal district court by invoking the Court's diversity jurisdiction.

Now before the Court are the parties' cross motions for summary judgment: Plaintiff's Motion for Partial Summary Judgment (Doc. 16) and Defendants' Motion for Summary Judgment (Doc. 19). For the reasons set forth below, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.[1]

## Background

For purposes of deciding these motions, the Court finds the relevant facts to be as follows.

On August 2, 2015, Plaintiff was riding his 2015 Harley Davidson motorcycle (the "Harley") when another motorcyclist, James Blaylock ("Blaylock") struck him, causing Plaintiff to lose control and sustain bodily injury. Blaylock was insured by a policy providing for liability coverage of $100,000, and that amount was tendered to Plaintiff after the accident.

Plaintiff then sent a demand for UIM benefits to Progressive Northwestern and Progressive Casualty under the Harley, Chevy, and Mazda policies. In his demand, Plaintiff asserted his injuries were in excess of $250,000, and he was owed $150,000 under the insurance policies.[2] Progressive Casualty and Progressive Northwestern denied Plaintiff's claims for UIM benefits. In denying his claims under the Chevy and Mazda Policy, Progressive Casualty asserted: (1) Plaintiff was not an "insured person" under the policies; (2) the Harley was owned by or available for the regular use of Plaintiff; and (3) Blaylock's vehicle was not an "underinsured motor vehicle." Progressive Cas. Denial Letter, Def.'s Ex. F (Doc. 20-6).

---

[1] Defendants' request for leave to file excess pages in their reply brief is GRANTED. *See* (Doc. 24 at 1).

[2] In his complaint, Plaintiff asserts his damages total over $350,000. Compl. ¶ 21 (Doc. 2-1). Plaintiff's demand letter, however, asserts "a jury would likely assess damages in excess of $250,000," entitling him to $150,000 in available limits. Def.'s Ex. E at 2 (Doc. 20-5).

Progressive Northwestern denied Plaintiff's claim under the Harley Policy because Blaylock's vehicle was not an "underinsured motor vehicle." Progressive Northwestern Denial Letter, Def.'s Ex. G (Doc. 20-7).

The Chevy and Mazda Policy was issued by Progressive Casualty and contains the following relevant language:

> "Auto" means a land motor vehicle: a. of the private passenger, pickup body, or cargo van type; b. designed for operation principally upon public roads; c. with at least four wheels; and d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
>
> . . .
>
> "Covered auto" means: a. any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer; b. any additional auto; c. any replacement auto; or d. a trailer owned by you.
>
> . . .
>
> "Replacement auto" means an auto that permanently replaces an auto shown on the declarations page. A replacement auto will have the same coverage as the auto it replaces if the replacement auto is not covered by any other insurance policy . . . .
>
> . . .
>
> "Insured person" means:
> a. you or a relative;
>     (1) while occupying an auto; or
>     . . .
> b. any person occupying a covered auto with the permission of you or a relative; and
> c. any person who is entitled to recover damages covered by this Part III(B) because of bodily injury sustained by a person described in (a) or (b) above.
>
> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than whichever of the following is shown on the declarations page for Underinsured Motorist Coverage: (a) the "Each Person Dollar Amount" to be used in determining the "Underinsured Motorist Limit – Each Person" . . . . An "underinsured motor vehicle" does not include any vehicle or equipment: (a) owned by you or a

relative or furnished or available for the regular use of you or a relative; [or] (f) that is a covered auto . . . .

. . .

Coverage [for underinsured motorist incidents] will not apply:
1. to bodily injury sustained by any person while using or occupying: . . .
    b. a motor vehicle that is owned by or available for the regular use of you or a relative. This exclusion does not apply to a covered auto that is insured under [the Underinsured Motorists section]; . . .

Chevy & Mazda Pol'y, Def.'s Ex. B at 6, 13, 28-29, 55-56 (Doc. 20-2) (emphasis omitted). The Declarations Page of the policy lists the 1993 Chevrolet C3500/K3500 Pickup and the 1990 Mazda Miata/MX-5 Convertible as covered vehicles, and sets forth a $100,000 "each person" bodily injury liability limit. *Id.* at 2. The Harley was never added as an "additional auto" or a "replacement auto" as defined in the policy, and Plaintiff never paid any additional premium to add the Harley to the Chevy and Mazda Policy.[3]

The Harley Policy was issued by Progressive Northwestern and contains the following relevant language:

> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
> 1. sustained by that insured person;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance, or use of an underinsured motor vehicle.
>
> We will pay under the Part III(B) [underinsured motorist coverage section] only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.
>
> . . .
>
> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds

---

[3] Plaintiff contends this issue is controverted, but does so with a legal argument. This is an improper way to controvert an asserted fact, and the Court deems this fact admitted for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(c), (e).

or policies applicable at the time of the accident is less than the coverage limit for
Underinsured Motorist Coverage shown on the declarations page.

Harley Pol'y, Def.'s Ex. C at 13-14 (Doc. 20-3) (emphasis omitted). The Declarations Page lists the Harley, a "2015 H-D FLHR Road Kin," as the covered vehicle, and an underinsured motorist limit of $50,000. *Id.* at 2.

The Declarations Page of both the Chevy and Mazda Policy and the Harley Policy states that "[a]ll limits listed [on the Declarations Page] are subject to all terms, conditions, exclusions and applicable reductions described in the policy." Chevy & Mazda Pol'y at 2; Harley Pol'y at 2.

## Standard

A moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a jury question presents on an element, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541–42 (8th Cir. 2014).

## Discussion

Defendants argue summary judgment in their favor is proper because the terms of both policies unambiguously bar Plaintiff's recovery. Plaintiff asserts the two policies are ambiguous and should be construed in his favor to allow coverage under both policies.

The interpretation of an insurance policy is a question of law, and "[t]he general rules for interpretation of contracts apply to insurance policies." *Progressive Cas. Ins. Co. v. Morton*, 140

F. Supp. 3d 856, 860 (E.D. Mo. 2015) (applying Missouri law); *see also McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999). "Because Missouri does not require underinsured motorist coverage, the existence of the coverage [is] determined by the insurance contract." *Lang v. Farmers Ins. Co., Inc.*, No. 4:14-cv-00501-HFS, 2015 WL 12731922, at *3 (W.D. Mo. June 1, 2015) (citing *Staufenbiel v. Amica Mut. Ins. Co.*, No. 4:13-CV-2571-JAR, 2015 WL 1456987 (E.D. Mo. Mar. 30, 2015)). "When 'construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . .'" *Morton*, 140 F. Supp. 3d at 860 (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009)). A court "should not interpret policy provisions in isolation but rather evaluate policies as a whole," and "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Id.* at 860-61 (internal quotations omitted). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007). If the language is ambiguous, "courts should construe the policy in favor of the insured." *Morton*, 140 F. Supp. 3d at 861 (citing *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008)).

I. **The decision of the Missouri Court of Appeals in *Fanning v. Progressive Northwestern Ins. Co.* is inapposite.**

Plaintiff avers *Fanning v. Progressive Northwestern Ins. Co.*, 412 S.W.3d 360 (Mo. Ct. App. 2013), is dispositive. Defendants counter that *Fanning* is not binding and is distinguishable factually and legally.

Because the Court sits in diversity, Missouri law governs. *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016). When Missouri law controls, the Court is "bound by

the decisions of the Missouri Supreme Court regarding issues of substantive state law." *Id.* (internal quotations omitted). "Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but [the Court is] not bound to follow these decisions." *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1068 (8th Cir. 1995).

In *Fanning*, the intermediate state appellate court found the declarations page of the policy at issue was explicitly defined as the "document showing [the insured's] coverages, limits of liability, . . . and other policy-related information." *Fanning*, 412 S.W.3d at 365. Because of this definition, the insurer was required to include *every* applicable limitation of UIM coverage on the declarations page. *Id.* at 366. The insurer failed to do this, and the policy was deemed ambiguous. *Id.* at 365-66.

First, the Court is not bound to follow this intermediate appellate court decision. Second, the facts here are distinguishable from those in *Fanning*. The policy at issue in *Fanning* indicated the declarations page would show any and all limitations of liability, and UIM limitations were not listed on the declarations page. *Fanning* Policy Decl. Page, Def.'s Reply Ex. A (Doc. 24-1). Here, the declarations page of each policy includes language explicitly indicating the policy limits are "subject to all terms, conditions, exclusions and applicable reductions described [elsewhere] in the policy," including the UIM limitations. Chevy & Mazda Pol'y at 2; Harley Pol'y at 2. When read as a whole, the declarations clearly indicate the insured must refer to the entire policy when determining the scope of coverage and any corresponding limitations. *See Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. 2014) ("The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage."). The Court fails to see how the declarations at issue here render the insurance contracts

ambiguous. *See also Burger*, 822 F.3d at 449 (discussing *Fanning* and finding that, because the reverse of the declarations page at issue stated that other endorsements formed the policy, the declarations page did not render the policy's UIM limitations ambiguous); *Naeger v. Famers Ins. Co.*, 436 S.W.3d 654, 660 (Mo. Ct. App. 2014) (stating that *Fanning* "does not stand for the proposition that a policy's declarations page must notify an insured of limitations or exclusions to UIM coverage absent such a requirement by the policy itself").

Plaintiff reiterates his argument that the declarations pages of his policies render the policies ambiguous in multiple sections of his briefing. The Court finds it is without merit, and rejects it with regard to each relevant portion of the policies.

**II. The Chevy and Mazda Policy is unambiguous and Plaintiff is not entitled to UIM coverage under its terms.**

Defendants assert summary judgment in Progressive Casualty's favor is warranted because: (1) Plaintiff is not an "insured person" because he was not occupying an "auto" as defined by the Chevy and Mazda Policy; (2) coverage is excluded for the Harley because it was owned by Plaintiff and thus is not a "covered auto" under the Chevy and Mazda Policy; and (3) the "owned vehicle" exclusion is unambiguous and bars recovery.[4]

The Chevy and Mazda Policy provides for coverage of an "insured person" that sustains accidental injury involving the use of an underinsured motor vehicle. The policy defines an "insured person" as:

> [A.] you or a relative;
>     (1) while occupying an auto; or
>     . . .
> [B.] any person occupying a covered auto with the permission of you or a relative; and

---

[4] Defendant also argues Blaylock's motorcycle was not an "underinsured motor vehicle" under the Chevy and Mazda Policy. Because the Court finds the policy unambiguously barred Plaintiff's recovery otherwise, it does not address this argument or Plaintiff's argument that the Chevy and Mazda Policy should "stack" on top of his Harley Policy.

[C.] any person who is entitled to recover damages covered by this Part III(B) because of bodily injury sustained by a person described in (a) or (b) above.

Chevy & Mazda Pol'y at 56.

First, Plaintiff is not an "insured person" under sections A or B because the Harley did not fall under the definition of "auto" or "covered auto" in the Chevy and Mazda Policy. The Harley had fewer than four wheels, and thus was not an "auto."[5] Similarly, it is undisputed the Harley was not a "covered auto."[6] Plaintiff, however, asserts he is an "insured person" as defined in section C. But, because Plaintiff is not entitled to recover damages under sections A or B, this argument necessarily fails.

Finally, Plaintiff argues, in conclusory fashion, that the "owned vehicle" exclusion[7] is ambiguous and unenforceable. Plaintiff does not explain this argument, and only "directs the Court to the citations above." Pl.'s Br. in Opp. at 16 (Doc. 21); Pl.'s Reply at 16 (Doc. 25). This argument is rejected. *See supra* Part I.

The Chevy and Mazda Policy is unambiguous regarding the definition of an "insured person." Plaintiff fails to meet this definition under these circumstances, and so is not entitled to UIM coverage under the terms of the Chevy and Mazda Policy. Accordingly, the Court enters summary judgment in favor of Defendant Progressive Casualty.

---

[5] "'Auto' means a land motor vehicle: a. of the private passenger, pickup body, or cargo van type; b. designed for operation principally upon public roads; c. with at least four wheels; and d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications." Chevy & Mazda Pol'y at 33.

[6] "'Covered auto' means: a. any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer; b. any additional auto; c. any replacement auto; or d. a trailer owned by you." Chevy & Mazda Pol'y at 33.

[7] "Coverage [for underinsured motorist incidents] will not apply: . . .
  1. to bodily injury sustained by any person while using or occupying: . . .
     b. a motor vehicle that is owned by or available for the regular use of you or a relative. This exclusion does not apply to a covered auto that is insured under [the Underinsured Motorists section]; . . . ." Chevy & Mazda Pol'y at 40.

### III. The Harley Policy is unambiguous and Plaintiff is not entitled to UIM coverage under its terms.

Defendants assert Plaintiff is not entitled to UIM coverage under the Harley Policy because Blaylock's vehicle is not an "underinsured motor vehicle" as defined in the policy. Plaintiff avers the language is ambiguous and should be interpreted in his favor.

The Harley Policy provides Progressive Northwestern will provide coverage otherwise due from the owner of an underinsured motor vehicle. An "underinsured motor vehicle" is "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the coverage limit for Underinsured Motorist Coverage shown on the declarations page." Harley Pol'y at 13-14.

The Harley Policy provides for $50,000 in underinsured motorist coverage, and Plaintiff was reimbursed for $100,000 from Blaylock's insurer. Because Plaintiff received more than the sum of the limits of liability for the policy applicable at the time—the Harley Policy—Blaylock's vehicle does not qualify as an "underinsured motor vehicle." Accordingly, summary judgment in Progressive Northwestern's favor is granted.

### Conclusion

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment (Doc. 16) is DENIED and Defendants' Motion for Summary Judgment (Doc. 19) is GRANTED. Summary judgment is entered in favor of Defendants Progressive Northwestern Insurance Company and Progressive Casualty Insurance Company.

**IT IS SO ORDERED.**

Dated: August 30, 2017  /s/ Greg Kays  
GREG KAYS, CHIEF JUDGE  
UNITED STATES DISTRICT COURT